UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
ENTERED

JAN 1 1 2000

Michael N. Milby, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

GERARDO CARRILLO, §
§
Plaintiff §
§
VS. § CIVIL ACTION NO. H-98-4023
§
HOUSTON POLICE OFFICERS J.A. §
DeSANTOS, D.C. ZAHARIS, AND §
J.A. JACKSON, CHIEF C. BRADFORD, §
AND THE CITY OF HOUSTON, §
§
Defendants §

## ORDER

Pending before the Court in the above referenced action alleging violations of Plaintiff Gerardo Carrillo's civil rights under the fourth, fifth, eighth, and fourteenth amendments and 42 U.S.C. § 1983, as well as state law torts of assault and battery, false arrest, false imprisonment, malicious prosecution, defamation, abuse of process, negligent hiring and retention of employees, negligence, and gross negligence, are the following motions: (1) Defendant Chief Clarence Bradford's motion to reconsider (instrument #48); (2) Defendants the City of Houston, Clarence Bradford, J.A. DeSantos, D.C. Zaharis, and J.A. Jackson's motion for summary judgment on claims against them in their individual and official capacities (#41); and (3) Plaintiff's motion for leave to amend his response to the motion for summary judgment (#44), with a copy of the proposed amended response attached.

Because there has been no opposition filed to Plaintiff's motion for leave to amend his response to the motion for summary

50

judgment, and because it was filed within the response period anyway, the Court grants it and considers the attached response.

Chief Bradford moves the Court to reconsider the magistrate's order of October 28, 1999[1] granting Plaintiff's motion to compel him to answer interrogatories and produce documents. With a copy of a letter from Plaintiff's attorney, James Rytting (Exhibit A), Bradford explains that on October 13, 1999, counsel for Plaintiff agreed to dismiss Chief Bradford in his individual capacity for supervisory liability in this suit and to withdraw Plaintiff's motion to compel. Bradford therefore did not file a reply to Plaintiff's motion to compel. When he received a copy of the Court's order granting it, he checked and learned that Plaintiff's counsel had never notified the Court of his promised voluntary withdrawal of the motion to compel. Bradford requests the Court to deny Plaintiff's motion to compel or, alternatively, to reconsider its order.

Plaintiff has failed to respond. Under Local Rule 6E, failure to respond is construed as nonopposition. The copy of Mr. Rytting's letter speaks for itself and supports the representation made in Defendant Bradford's motion. Moreover, in Plaintiff's amended response to the motion for summary judgment, counsel states that he has informed Defendants' counsel that he will voluntarily dismiss Bradford in his individual capacity for supervisory liability. The Court accordingly grants the motion to reconsider

---

[1] Defendant erroneously states that the order was entered on September 28, 1999.

and denies Plaintiff's motion to compel discovery from Chief Bradford in his individual capacity.[2]  Nevertheless, because Plaintiff has not moved to dismiss Bradford in his individual capacity and Defendant has not moved to enforce the agreement between counsel, Bradford remains a defendant in this action.

### FIRST AMENDED COMPLAINT

The first amended complaint (#24) asserts claims for a pattern or practice of police misconduct, as well as for Plaintiff's own alleged false arrest, false imprisonment, and malicious prosecution, against officers of the Police Department, including Chief Bradford, in their individual and official capacities, as well as state law claims.

Plaintiff, who sought political asylum in the United States after fleeing Cuba in 1978, is now a naturalized citizen of this country and works as a salesman and professional musician.  He alleges that on October 14, 1998, he was waiting for a bus at the corner of Fulton and Weis Road in north central Houston at a well lit bus stop.  He was carrying a plastic garment bag and a long

---

[2]  The Court is aware that because the City of Houston has been named as a Defendant, the suit against Bradford in his official capacity is merely redundant.  Kentucky v. Graham, 473 U.S. 159, 166, 167 n.14 (1985)("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity . . . ."; there is "no longer a need to bring official capacity actions against local government officials, for under Monell v. Department of Social Services, 436 U.S. 658 (1978), local government units can be sued direct for damages and injunctive and declaratory relief."

CMsPDF - www.fesiio.com

coat. He wore slacks, a belt, and loafers, and had his shirt, which had a collar, two breast pockets, and buttons down the front, tucked into his pants.

According to the complaint, Officer DeSanto's squad car approached Plaintiff, blocked the oncoming lane about ten feet from Plaintiff, and, with Plaintiff in the light issuing from the headlights, Defendant DeSanto got out of the car with his revolver drawn[3] and aimed at Carrillo. DeSanto ordered, "Put that shit on the ground." Carrillo tried to explain that he was a salesman and was working, but the officer simply repeated his order. Carrillo then placed the garment bag to his right, laid the coat on top, and got up with his hands at his sides.[4] After a few minutes, four other police cars arrived.

One officer got out of the car and allegedly bludgeoned Carrillo with a flashlight on his elbow, lower scapula, and shoulder. Carrillo raised an arm in front of his face to ward off additional blows to his forearm. The officer then grabbed Carrillo by the throat, cutting off air and blood flow, while two other officers grabbed Carrillo's legs and chest and threw him down on the ground. A policeman applied another chokehold, while another

---

[3] In his amended response to the motion for summary judgment, Plaintiff identifies it as a semi-automatic weapon.

[4] In his amended response, Plaintiff states that he made sure that his hands remained visible and that the officers could see his hands were empty. He notes that the area was well lighted by the headlights of DeSantos' car, a street lamp, and the flashlights of several officers, as well as the lights from the Pentecostal Church directly across Fulton Road.

put his knee on Carrillo's cervical spine and pushed with such strength that Carrillo was unable to breathe.   Another officer placed a knee on Carrillo's lumbar spine, while a third kicked Carrillo's legs apart.  Carrillo was then handcuffed.  The officer applying the chokehold released it, but then gripped Carrillo's head and slammed it against the ground twice.  Carrillo claims that he was badly bruised and was in too much pain for several weeks to play percussion instruments.  The police then searched him and his property.  Although they found his daily planner with the names of the merchants for whom he worked and of customers he was to visit, the police accused Plaintiff of stealing the items he was carrying.

The police put him in the patrol car driven by DeSanto. Plaintiff heard the radio dispatcher describing a robbery suspect who had held up a Burger King within a half mile of the spot where he was assaulted.  The dispatcher described the suspect as black, brandishing a gun, wearing a tee-shirt, and departing in a speeding vehicle.[5]  The police then brought a female eyewitness to the car who presumably told the police that Carrillo was not the robber since he was not arrested on this charge.

The complaint alleges that instead of releasing Plaintiff, another police officer said to DeSanto, "We're going to keep working this robbery.  What are you going to do with this guy."  DeSanto answered, "I'm going to put a P.I. [sic., public

---

[5]  In his amended response, Plaintiff further states that the dispatcher described the suspect as from 18-22 years of age. Plaintiff is 44.

- 5 -

intoxication] on him and get him out of here." Plaintiff maintains
that he was not intoxicated or under any medication that impairs
coordination that day, that he does not drink alcohol or take
illegal drugs, and that the police did not test him for
intoxication.[6]

Plaintiff asserts that the chokeholds caused him to have
laryngeal spasms and hypoxia. The use of physical force against
him and the emotional distress he suffered in this false arrest
induced an asthmatic attack. When Plaintiff stated on the way to
the station that DeSanto was "abusing [his] power," DeSanto
allegedly threatened to "get back there and beat the shit" out of
Plaintiff. The severity of the asthma attack increased and once
at the jail, Plaintiff had to be taken to the infirmary for
immediate medical treatment. He was booked for public intoxication
and placed in a cell with about fifty others, most of whom were
extremely drunk.

The complaint states that Plaintiff was in the "drunk
tank" all night, and the next day, October 15, 1998, he was
arraigned by television and pled innocent to the charge of public
intoxication. That night he was still imprisoned in the tank,
where fights broke out, there was only one exposed toilet, and
people were vomiting and yelling. On October 16, 1998, Carrillo

---

[6] Plaintiff's amended response further asserts that the
officers did not test him for intoxication, did not inform him of
the charge against him or read him his <u>Miranda</u> rights. He claims
the officers concocted the story that he committed a class C
assault against Officer Zaharis the next day but that Defendants
cannot produce a charging instrument for this alleged offense.

was released.

The complaint further asserts that after DeSanto drove off with Plaintiff to the jail on October 14, 1998, the other officers chatted and joked even though they were aware that they had brutally beaten and falsely arrested an innocent person.  It charges that no officer has come forward to protest or report the use of force against Carrillo of his false arrest and imprisonment.

Not only did Plaintiff allegedly suffer physical injuries, but his false arrest and imprisonment by five or more police officers with guns trained on him and who severely beat and choked him, caused him extreme mental anguish while the officers' guns remained trained on him,[7] exacerbated by the fact that he fled a police state and came to the United States where the rule of law was supposed to limit arbitrary exercise of brute force and deprivation of liberty.  As a door-to-door salesman dependent on Houston Metro for transportation, he continues to fear for his life, liberty, and safety.

In sum, Plaintiff alleges that Defendants' actions deprived him of his constitutional rights, including his right to

---

[7]  In his amended response, Plaintiff further states that DeSantos, Zaharis and Jackson threatened him with deadly force; that Zaharis inflicted blunt trauma injuries to his torso and arm, put him into the two chokeholds, and slammed his head against the ground; that Jackson, DeSantos and Zaharis threw him to the ground; and that Jackson or DeSantos kneed him in the lower spine and kicked his legs apart.  He alleges that DeSantos, Zaharis, and Jackson arrested Carrillo for public intoxication, and that DeSantos made up the report that Carrillo assaulted Officer Zaharis.

be free from unreasonable searches and seizures,[8] his fifth and

---

[8] A cause of action for false arrest under § 1983 may be based on an arrest without a properly issued arrest warrant or an arrest without probable cause. Dennis v. Warren, 779 F.2d 245 (1985). For a cause of action for false arrest under § 1983, a plaintiff must show that the arresting officer lacked probable cause to arrest him in light of the totality of circumstances surrounding the arrest. Fields v. City of South Houston, Texas, 922 F.2d 1183, 1189 (5th Cir. 1991); United States v. Maslanka, 5-1 F.2d 208, 212 (5th Cir. 1974), cert. denied, 421 U.S. 912 (1975).

The elements of a constitutional tort of false imprisonment under the fourteenth amendment are (1) intent to confine, (2) acts resulting in confinement, and (3) consciousness of the victim of confinement or resulting harm, combined with § 1983 prerequisites of deprivation of a right secured by the Constitution or federal laws by an official acting under color of state law. Harper v. Merckle, 638 F.2d 848, 860 (5th Cir. Unit B), cert. denied, 454 U.S. 816 (1981); Bryan v. Jones, 530 F.2d 1210, 1213 (5th Cir.), cert. denied, 429 U.S. 865 (1976).

There may also be liability for false imprisonment if an unlawful detention follows even a lawful arrest. Gladden v. Roach, 864 F.2d 1196, 1201 (5th Cir.).

The Fifth Circuit recognizes a fourth amendment constitutional tort of malicious prosecution. Evans v. Ball, 168 F.3d 856, 862 and n. 9 (1999). But see Kerr v. Lyford, 171 F.3d 330, 342 (5th Cir. 1992)(Jones, J., concurring)(questioning Fifth Circuit's reasoning in recognizing such). For malicious prosecution under § 1983 a plaintiff must show (a) criminal action initiated against him, (2) the prosecution was caused by or aided by the defendant, (3) the action was terminated in the plaintiff's favor, (4) the plaintiff was innocent, (5) the defendant acted without probable cause, (6) the defendant acted with malice, and (7) the criminal proceeding damaged the plaintiff. Kerr, 171 F.3d at 340.

In Albright v. Oliver, 114 S. Ct. 807 (1996), the Supreme Court held that a claim of prosecution without probable cause may not be based on the fourteenth amendment due process clause, but only on the fourth amendment. See also Graham v. Connor, 490 U.S. 386 (1989)(when a criminal defendant is charged and arrested, the fourth amendment is the only source of protection for "pretrial deprivations of liberty."). The Graham Court concluded that all claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the fourth amendment's objective reasonableness standard, which focuses on the facts and circumstances of each case in evaluating the official's conduct. Id. Interpreting Albright, the Fifth Circuit has held "that there is no substantive right to be free from criminal prosecution except upon probable cause." Morin v. Caire, 77 F.3d 116, 120 (5th Cir.

CUMPDF - www.texiu.com

fourteenth amendment right due process of law, and his eighth amendment right to be free from cruel and unusual punishment. He further claims under state law assault and battery, false arrest, false imprisonment, malicious prosecution, abuse of process, "prima facie tort," conspiracy, negligence and gross negligence.

The Court would point out that Plaintiff has no cognizable claim against Defendants under the eighth amendment. Because the eighth amendment protects only convicted individuals, pre-trial detainees cannot bring a cause of action under it. <u>Morin v. Claire</u>, 77 F.3d 719, 120 (5th Cir. 1996)("The protections of the Eighth Amendment against cruel and unusual punishment are limited in scope to convicted prisoners and do not apply to pretrial detainees such as the plaintiffs."); <u>Baker v. Putnal</u>, 75 F.3d 190, 198 (5th Cir. 1996). Similarly, the fifth amendment applies only to acts of the federal government and not to those of a municipality. The Supreme Court has held that there is no substantive due process right to be free from criminal prosecution except upon probable cause; Plaintiff's allegations of unreasonable

---

1996).
     To prevail on a claim of excessive force under the fourth amendment and § 1983, the plaintiff must demonstrate that he (1) suffered some injury that (2) resulted from force that was clearly excessive to the need for force, (3) the excessiveness of which was objectively unreasonable. <u>Heitschmidt v. City of Houston</u>, 161 F.3d 834 (5th Cir. 1998); <u>Carter v. Fenner</u>, 136 F.3d 1000, 1010 (5th Cir. 1998), <u>cert. denied</u>, 119 S. Ct. 591 (1998). The "reasonableness" inquiry, as in all fourth amendment contexts, is whether the official's actions are objectively reasonable in light of the facts and circumstances he is facing, without regard to his underlying intent or motivation. <u>Graham v. Connor</u>, 490 U.S. 386, 397 (1989).

search and seizure without probable cause (his false arrest and imprisonment) and excessive force against Defendants would fall under the fourth amendment. Albright, 510 U.S. 266. Nevertheless, Plaintiff's claims about the condition of his confinement or an "episodic act or omission" after his arrest, when he was a pretrial detainee, would fall under the fourteenth amendment's due process clause. Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999); Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997)(en banc). Plaintiff's claims about the conditions in his cell, if he intends to pursue them as a separate basis for liability against the City, appear to fall in the former category. He has not expressly stated that he is.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants appear to move for summary judgment on only some claims against them. The movant seeking a federal summary judgment initially must inform the court of the basis for its motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file that demonstrate the absence of a genuine issue of material fact and show that it is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant need not negate the opposing party's claims nor produce evidence showing an absence of a genuine factual issue, but may rely on the absence of evidence to support essential elements of opposing party's claims. International Assoc. of Machinists & Aerospace

Workers, Lodge No. 2504 v. Intercontinental Mfg. Co., 812 F.2d 219, 222 (5th Cir. 1987).  The burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial.  Fed. R. Civ. P. 56(c).  The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The non-moving party may not rest on mere allegations or denials in his pleadings but must produce affirmative evidence and specific facts.  Anderson, 477 U.S. at 256-57.  He meets this burden only if he shows that "a reasonable jury could return a verdict for the non-moving party." Id. at 254. A mere scintilla of evidence will not preclude granting of a motion for summary judgment.  Id. at 252.

All reasonable inferences must be drawn in favor of the non-moving party.  Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574. 587-88 (1986), citing United States v. Diebold, 369 U.S. 654, 655 (1962).  Once the burden of proof has shifted to the non-movant, he "must do more that simply show that there is some metaphysical doubt as to the material facts." Id. at 586.  Instead he must produce evidence upon which a jury could reasonably base a verdict in his favor.  Anderson, 477 U.S. at 249.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted." Id., 477 U.S. at 249-50. Moreover the non-movant must "go beyond the pleadings and by her own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial. Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A., 139 F.3d 552, 536 (5th Cir. 1998). Unsubstantiated and subjective beliefs and opinions are not competent summary judgment evidence. Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir.), cert. denied, 115 S. Ct. 195 (1994); Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. denied, 506 U.S. 825 (1992). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. Salis v. Carpenter, 908 F.2d 299, 305 (5th Cir. 1992); Lujan v. National Wildlife Fed'n, 497 U.S. 871, 889 (1990).

The Court has experienced difficulty in following Defendants' motion for summary judgment, which fails to state clearly and separate the claims that Plaintiff has made, identify what law relates to each claim, why, and how, and clarify why the claims fail. The Court addresses those matters that it has been able to identify and attempts to clarify the issues and the applicable law.

Citing as its authority Palmer v. City of San Antonio, 810 F.2d 514, 516 (5th Cir. 1987), the City first argues that Plaintiff has failed to plead with particularity, but has only conclusorily alleged, that it had a custom, policy, or practice that was the moving force behind a violation of Plaintiff's

constitutional rights. The Court would point out that in Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 167 (1993), the Supreme Court rejected the Fifth Circuit's heightened pleading requirements for municipal liability under § 1983. Therefore Defendants' first argument lacks merit. Nevertheless, at summary judgment or trial stage, Plaintiff is required to prove such a custom, practice or policy.[9]

---

[9] In light of the Supreme Court's rejection of respondeat superior and to avoid providing absolute immunity to municipal bodies, § 1983 municipal or local government liability may be imposed when (1) the enforcement of a municipal policy or custom was (2) the "moving force" of the violation of federally protected rights. City of Canton v. Harris, 489 U.S. 378, 388-92 (1989); Polk County v. Dodson, 454 U.S. 312, 326 (1981); Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978). "The 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees in order to limit municipal liability to conduct for which the municipality was actually responsible." Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)(emphasis in original). Thus municipal liability under § 1983 can be founded upon officially promulgated policy (Monell), a custom or persistent practice, or a single decision by an official with final policy-making authority (Pembaur and St. Louis v. Praprotnik, 485 U.S. 469 (1988). A policy "generally implies a course of action consciously chosen from among various alternatives." Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985). Municipal liability can also be premised upon a municipality's failure to adopt a policy that is obviously needed to prevent predictable constitutional violations where failure to do so constitutes deliberate indifference to constitutional rights. City of Canton, 489 U.S. 390 n.10. The establishment of a municipal official's individual liability is not a prerequisite to the imposition of liability on a municipal entity. Garcia v. Salt Lake County, 768 F.2d 303, 310 (10th Cir. 1985).

The Fifth Circuit defines official municipal policy as follows:

> 1. A policy, statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality 's lawmaking officers or by an official to whom the lawmakers have delegated policy-making

CHXPDF - www.texisi.com

> authority; or
>
> 2.  A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.  Actual or constructive knowledge of such a custom must be attributable to the governing body of municipality or to an official to whom that body had delegated policy-making authority.  Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

<u>Webster v. Houston</u>, 735 F.2d 838, 841, <u>on rehearing on other grounds</u>, 739 F.2d 993 (5th Cir. 1984)(<u>en banc</u>); <u>Bennett v. City of Slidell</u>, 735 F.2d 861 (5th Cir. 1984)(<u>en banc</u>), <u>cert. denied</u>, 472 U.S. 1016 (1985).  <u>See also</u> <u>McConney v. City of Houston</u>, 863 F.2d 1180 (5th Cir. 1989).  Whether an official has final policymaking authority is a question of state law.  <u>Pembaur</u>, 475 U.S. at 483. State authority to make municipal policy can be given to an official directly by legislative enactment or may be delegated by an official with such authority to another official.  <u>Id</u>.  <u>See generally</u> <u>Flores v. Cameron County, Texas</u>, 92 F.3d 258, 263-64 (5th Cir. 1996).  Furthermore, the courts have now recognized a third situation which also may constitute a municipal policy:  when a policy maker fails to act affirmatively at all, if the need to take action to control agents of the local governmental entity "is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that policy make[r] . . . can reasonably be said to have been deliberately indifferent to the need."  <u>Brown</u>, 520 U.S. 397, 418 (quoting <u>Canton</u>, 489 U.S. at 390); <u>Burge v. Parish of St. Tammany</u>, 187 F.2d 452, 471 (5th Cir. Aug. 25, 1999).

In <u>Pembaur</u>, 475 U.S. 469, and <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112 (1988), the Supreme Court distinguished between officials with only decision-making authority and those with policy-making authority.  <u>Jett v. Dallas Independent School Dist.</u>, 7 F.3d 1241, 1246 (5th Cir. 1993).  "[M]unicipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances," and "where action is directed by those who establish governmental policy, the municipality is equally responsible whether the action is to be taken only once or to be taken repeatedly."  <u>Pembaur</u>, 475 U.S. at 480-81; <u>Jett</u>, 7 F.3d at 1246.  Nevertheless, for a city to be liable, the decision must be made by an official with final policy-making authority with respect to the matter decided.  "Municipal liability attaches only

- 14 -

Defendants observe that because municipalities have no liability under § 1983 for vicarious or respondeat superior liability, any claim against the City of Houston must be predicated on allegations that the City's employees' wrongful acts were carried out pursuant to official policy, custom, or practice. Monell, 436 U.S. at 691. Defendants offer as evidence Exhibit A, a copy of the City's existing policy regarding the use of force by police officers, General Order 600-17, which expressly limits such use to "that which is reasonably necessary to protect themselves, to effect an arrest, or to bring an incident under control."

The Court would point out that such is not sufficient to preclude the possibility of Plaintiffs' proving the existence of other City practices, customs, and policies. For instance, "the inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. . . . Only where a municipality's failure to train

---

where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official--even a policymaking official--has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on the exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable. [citations omitted]" Praprotnik, 485 U.S. at 130. When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the decision-maker's departure from them, are the acts of the municipality. Jett, 7 F.3d at 1246-51; Eugene v. Alief I.S.D., 65 F.3d 1299 (5th Cir. 1995), cert. denied sub nom. Conley v. Eugene, 517 U.S. 1191 (1996).

- 15 -

its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989); <u>Burge v. Parish of St. Tammany</u>, 187 F.3d 452, 472 (5th Cir. 1999)(quoting <u>Canton</u>). Thus while the City may have a written constitutional policy regarding use of force by police, if it is deliberately indifferent to the needs of its citizens and does not adequately train its offices in that appropriate use and that failure to provide proper training actually causes injury, it may still be liable. The same would be true in the deliberately indifferent hiring of a police officer, "where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of a decision to hire the applicant would be the deprivation of a third party's federally protected right." In <u>Board of County Commissioners of Bryan County, Okla. v. Brown</u>, 517 U.S. 397, 398 (1997)(highlighting strict fault and causation standards), the Court emphasized that the plaintiff must demonstrate with rigorous proof that the hired officer "was highly likely to inflict the <u>particular</u> injury suffered by the plaintiff).[10] The same is true where a

---

[10] In <u>Board of County Commissioners of Bryan County v. Brown</u>, 117 S. Ct. 1382, the Supreme Court recognized that when a policy maker fails to act affirmatively at all, if the need to take action to control agents of the local governmental entity "is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that policy make[r] . . . can reasonably said to have been deliberately indifferent to the need."

CVisPDF - www.texiss.com

municipality's deliberately indifferent supervision, discipline or remedial action is the moving force behind a violation of a plaintiff's federal rights. <u>See, e.g.</u>, <u>Sharp v. City of Houston</u>, 164 F.3d 923 (5th Cir. 1999)(failure of horse-mounted police officer's supervisors to act when they became aware of retaliation against her supported jury's conclusion that HPD had a policy, custom or practice of enforcing police code of silence and that HPD was deliberately indifferent to her constitutional rights because of its inaction in the face of retaliation against her by her co-workers and supervisors for suing for sexual harassment); <u>Vann v. City of New York</u>, 72 F.3d 1040, 1051 (2d Cir. 1995); <u>Doe v. Hillsboro Independent School Dist.</u>, 81 F.3d 1395, 1407 (5th Cir. 1996)(rape victim's complaint stated constitutional claims against supervisors for deliberately indifferent hiring practices and failure to investigate allegations of school abuse, but she failed to prove a nexus), <u>rev'd on other grounds on rehearing en banc</u>, 113 F.3d 1412 (5th Cir. 1997)(parents failed to show nexus between school officials' failure to check background of school janitor and assault and rape of student).

    With a supporting affidavit from Executive Assisstant Police Chief Joe Breshears, Defendants maintain that because an armed robber had just left a nearby Burger King and officers in the area were searching for the suspect when they encountered Carrillo, they were acting reasonably in light of the information available to them at the time. Although the allegations are not made in Plaintiff's complaint, Defendants state that Carrillo claims that

- 17 -

the City knew that one officer had been disciplined for drinking and one had a history of illegal drug use. Since there is no allegation of wrongful acts carried out pursuant to an official municipal policy or practice, insist Defendants, and because there is no municipal liability based on <u>respondeat superior</u>, the City is not liable to Carrillo for inadequate hiring or supervision, since Carrillo has not shown that the City had a conscious disregard of the possibility that particular officers would violate his civil rights in the particular manner he has alleged. Defendants emphasize the rigorous standards of showing fault and causation.

Defendants also argue that Plaintiff cannot recover against the City, which has asserted the affirmative defense of governmental immunity, for intentional torts of assault, battery, false arrest, false imprisonment, malicious prosecution, defamation, and abuse of process. The City is immune from liability for the intentional torts of its employees under the Texas Tort Claims Act, § 101.057(2).

Defendants also contend that Plaintiff has failed to state a claim against Police Chief Bradford with factual particularity to show why he is not entitled to qualified immunity[11] in his individual capacity. <u>Babb v. Dorman</u>, 33 F.3d

---

[11] The Court would point out that immunity from § 1983 claims of violations of federal law is a matter of federal law. <u>Howlett v. Rose</u>, 496 U.S. 356 (1990).

Qualified immunity shields public officials performing discretionary functions from liability for suits brought against them in their personal capacities unless their conduct violates clearly established rights of which a reasonable person would have known. <u>Gibson v. Rich</u>, 44 F.3d 274, 277 (5th Cir. 1995).

CitiPDF - www.fastio.com

Qualified immunity is immunity from suit, i.e, from trial
altogether, not just immunity from monetary damages.  Mangieri v.
Clifton, 29 F.3d 1012, 1015 (5th Cir. 1994).  The doctrine of
qualified immunity "reconciles two competing interests.  One
interest is the compensation of persons whose federally protected
rights have been violated.  Opposing this is the fear that personal
liability will inhibit public officials in the discharge of their
duties."  Johnston v. City of Houston, 14 F.3d 1056, 1059 (5th Cir.
1994). The burden of negating a qualified immunity defense belongs
to the plaintiff.  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).
To overcome a state official's assertion of a qualified immunity
defense, a plaintiff must establish first, that the official's
conduct violated clearly established federal statutory or
constitutional rights of which a reasonable person would have known
and, if plaintiff succeeds, second that the defendant's alleged
conduct was not "objectively reasonable 'in light of the legal
rules clearly established at the time.'"  Siegert v. Gilley, 500
U.S. 226, 231 (1991); Hassan v. Lubbock Indep. School Dist., 55
F.3d 1075, 1079 (5th Cir.), cert. denied, 516 U.S. 995 (1995).
Under the first prong, a right is "clearly established" only if its
contours are sufficiently clear that a reasonable official would
have realized that his conduct violated that right, not simply that
the conduct was otherwise improper.  Foster v. City of Lake
Jackson, 28 F.3d 425, 429 (5th Cir. 1994).  Moreover, under the
second prong, even where a plaintiff satisfies the first prong and
establishes that his constitutional rights have been violated, a
defendant is immune from liability if reasonable public officials
could differ on the lawfulness of his actions.  Blackwell v.
Barton, 34 F.3d 298 (5th Cir. 1994).  The standard "gives ample
room for mistaken judgments" by protecting "all but the plainly
incompetent or those who knowingly violate the law."  Malley v.
Briggs, 475 U.S. 335, 341 (1986).  Moreover, "[u]nless the
plaintiff's allegations state a claim of violation of clearly
established law" under the first prong to the test, a defendant
asserting qualified immunity as a defense is entitled to dismissal
even before discovery has commenced.  Mitchell, 472 U.S. at 526.
The district court's determination whether a defendant is entitled
to qualified immunity is a question of law.  Lampkin v. City of
Nacodoches, 7 F.3d 430, 434-35 (5th Cir. 1993), cert. denied sub
nom. Vanover v. Lampkin, 511 U.S. 1019 (1994).

Qualified immunity will not protect an official's conduct
if, in light of pre-existing law, the conduct when undertaken
constituted a violation of the right at issue.  The very conduct in
question, however, need not have been held to be a constitutional
violation.  Anderson v. Creighton, 483 U.S. at 640.

Qualified immunity may be asserted as a defense to a
detainee's excessive force claim.  Valencia v. Wiggins, 981 F.2d
1440 (5th Cir.), cert. denied, 509 U.S. 905 (1993).  Moreover, even
where an arrest is not supported by a warrant or probable cause, an

- 19 -

472, 477 (5th Cir. 1994). At best, they assert, the complaint only conclusorily alleges that Bradford "was responsible for the training, supervision, and conduct of the defendant officers in this case. He is also responsible for enforcing the City of Houston's regulations and for ensuring that police personnel obey the laws of the State of Texas and the United States." Defendants insist that "[t]hese allegations alone are insufficient to establish a claim against Chief Bradford."[12]  They further argue, with a supporting affidavit from Bradford, that there is no supervisory liability here because Bradford played no affirmative role in the arrest, imprisonment, and prosecution of Plaintiff. Baker v. Putnal, 75 F.3d 190 (5th Cir. 1996)(An official may be liable as a supervisor only if he affirmatively participates in acts that cause a constitutional deprivation or if he implements unconstitutional policies that cause injury to the plaintiff).[13]

Individual defendants argue they are entitled to qualified immunity. They assert that the officers' incident report (Exhibit C) reflects that Carrillo refused to cooperate with an order to put down his bag and remove his hand from his pocket.

---

officer will be shielded in his personal capacity from liability where there was arguable probable cause, i.e., where the officer made a reasonable mistake. Anderson v. Creighton, 483 U.S. 635.

[12] The Court would again emphasize the distinction, which Defendants at times have blurred, between pleading a claim sufficiently and proving it on summary judgment.

[13] As the Court has noted, it is in this capacity that Plaintiff's counsel has informed Defendants' attorney that he will voluntarily dismiss Bradford, but thus far has not done so.

CVisPDF - www.texiis.com

Citing the Texas Penal Code § 38.03, and not federal constitutional law, they also argue that there is no justification for resisting a search or arrest even if the arrest is unlawful. Moreover, they insist Carrillo's arrest was legally justified. They explain that when the case was called to trial on October 16, 1998 it was dismissed without an opportunity for the officers to appear[14] and testify and therefore without a finding that the officers did not have probable cause to arrest him. They conclusorily assert that they had probable cause to arrest him and emphasize that there is no constitutional guarantee that only the guilty will be arrested. Baker v. McCollan, 443 U.S. 137 (1979). They further point to affidavits from the officers testifying that their actions were reasonable in light of Carrillo's behavior at the time of his detention and arrest, that no excessive force was used upon him because no physical contact would have been necessary if he had cooperated with their orders.

As noted above, Defendants also observe that the eighth amendment applies only to convicted prisoners, not to pretrial detainees.

To his amended response, Plaintiff inter alia attaches his own affidavit regarding the arrest incident, records showing that Officer Zaharis had been the target of internal investigations for the use of excessive force and that HPD had found Zaharis drank

---

[14] From the amended complaint the Court surmises that they had the opportunity but failed to show up to testify at Plaintiff's trial.

beer on duty and discharged his firearm in an alcoholic celebration, and that Officer Jackson used illegal drugs and lied about the frequency of his use, but was hired despite this history.

With regard to Defendants' affirmative defenses of qualified immunity in their individual capacities, Plaintiff notes the deficiencies of Defendants' summary judgment evidence. First Carrillo's affidavit disputes the facts alleged in Defendants'. In addition Defendants' two police reports are merely the unsworn testimony of DeSantos and Zaharis, who wrote them, and are controverted by Plaintiff's affidavit. Lt. Breshears' affidavit presumes the factual allegations in the reports are true, while Breshears has no personal knowledge of the facts but is a purported expert testifying about reasonableness of the officers' actions from their version of the facts. It is not a scientific opinion and should be discounted as incompetent, argues Plaintiff.

Pointing to established law that there is a constitutional right to be free from illegal detentions[15] and that when officers no longer have a reason to continue to detain an individual, any continued detention constitutes an illegal arrest,[16] Plaintiff insists, and the Court agrees, that there are material issues of fact in dispute regarding qualified immunity,

---

[15] Duckett v. City of Cedar Park, 950 F.2d 272, 278 (5th Cir. 1992)("An individual has a federally protected right to be free from unlawful arrest and detention resulting in a significant restraint of liberty and violation of this right may be grounds for suit under Section 1983.").

[16] Florida v. Royer, 460 U.S. 491, 501 (1983).

- 22 -

i.e., whether Plaintiff fit the description of the robbery suspect, whether it was reasonable for the officers to detain him, and whether Carrillo's conduct (never attempting to flee or make furtive gestures, obeying the officers' orders) justified their treatment of him.

Plaintiff insists there are also material factual issues regarding the reasonableness of the alleged use of excessive force for purposes of determining whether the officers are entitled to qualified immunity.  In addition to his affidavit evidence, he offered pictures of his physical injuries during his deposition. His affidavit raises issues about his conduct and the officers', including their use of force.  He also maintains with his affidavit in support that Zaharis used deadly force against him and points to an HPD circular (Exhibit E) stating that HPD had decided not to teach use of chokeholds and neck restraints because "these techniques can result in death either on the scene or later in custody."  Strangulation and repetitive blunt trauma may constitute deadly force.

Even where the force was not deadly, Plaintiff contends with supporting evidence, it was not only out of proportion to the need, but that the use of force against him was malicious and the officers' version of events was manufactured to justify using excessive force against him and cites <u>Williams v. Bramer</u>, 180 F.3d 699 (5th Cir. 1999).  The Court observes that <u>Bramer</u>, however, has been reclarified on rehearing, 186 F.3d 633 (5th Cir. 1999)(<u>per curiam</u>), in which the Fifth Circuit indicates that the subjective

- 23 -

intent of an individual office is irrelevant to a determination of whether a seizure is unreasonable under the fourth amendment. <u>See Graham v. Connor</u>, 490 U.S. at 397. Thus Plaintiffs' arguments and evidence of malice on the officers' part are moot.

Plaintiff additionally provides summary judgment evidence raising material issues of fact as to lack of probable cause for his arrest for either intoxication or for a Class C assault of Zaharis under Section 22.01(a)(1) of the Texas Penal Code.

As for municipal liability of the City of Houston, Plaintiff asserts that when City officials with policy making authority breach their duty to control unconstitutional actions of subordinates, the City may be liable. <u>Sims v. Adams</u>, 537 F.2d 829 (1976). Where high ranking officials fail to react to patterns or practices so widespread that those in charge of policy should know of the abuse their inferiors have meted out, the City may be liable. <u>Grandstaff v. City of Borger</u>, 767 F.2d 161, 170 (5th Cir. 1985). The Court has previously discussed more recent developments, with the standard of deliberate indifference and stringent evidentiary requirements in this area of law.

Plaintiff contends that his charge that DeSantos stated that he was going "to put a P.I." on Plaintiff shows false arrest in a language or code used by police officers, evidence of a widespread practice of false arrest. He further contends that the conduct (joking and laughing) of the officers remaining at the scene of the arrest after removal of Plaintiff also demonstrates that false arrest is routine among Houston Police. Carrillo also

- 24 -

CMSPDF - www.texiss.com

presented evidence that city officials were aware of Zaharis'
propensity for violence, that the records show that he had a
propensity for violence because he discharged his weapon as part of
an alcoholic celebration. Breshears' answers to Bradford's
interrogatory #8, Group Exhibit F, reflect that Zaharis has been
investigated several times for excessive use of force, yet HPD
continued to arm Zaharis and assign him to details requiring
decisions regarding use of necessary force. HPD furthermore paired
Zaharis with a first-year officer, Jackson.

Carrillo also contends that summary judgment for the City
is inappropriate because the City has refused to respond to
Carrillo's request for documents that are essential for his claims,
i.e., records of prior constitutional violations by Defendant
officers on the ground that they are privileged under Texas law.
Because Judge Stacy has ruled on Plaintiff's motion to compel, the
Court assumes this matter is moot.

The Court agrees with Plaintiff that he has raised issues
of fact regarding Officers DeSantos, Zaharis, and Jackson's
entitlement to qualified immunity in their individual capacities.
Nevertheless, not only has Plaintiff indicated that he intends to
dismiss claims for supervisory liability against Bradford in his
individual capacity, but he has not presented any argument and
evidence to contradict Defendants' argument that Bradford is not
liable in his individual capacity as a supervisor. Thus the Court
grants Defendants' motion with respect to Bradford only for
individual capacity claims.

CtrlPDF - www.fasiss.com

As for the City of Houston, as a major problem the Court finds that Defendants' motion for summary judgment does not clearly raise the legal claims of inadequate hiring, supervision and training under § 1983, and therefore Plaintiff does not have definite notice of such.  Plaintiff has presented some evidence of inadequate hiring and supervision, though no discussion of causation, which is vital to his claim.  Furthermore, Plaintiff's amended complaint does not indicate clearly if he is pursuing claims against the City for the conditions of his confinement under § 1093 and the fourteenth amendment.  Because of the obfuscation of both parties' pleadings related to municipal liability at this time, the Court denies the motion for summary judgment on the City's liability, but depending on proof presented at trial, may entertain a motion for directed verdict at the appropriate time.

As for the state law claims against the City for intentional torts under the Texas Tort Claims Act, the Court agrees that the City has not waived its immunity from such claims as assault and battery, false arrest, false imprisonment, malicious prosecution, defamation and abuse of process and therefore they should be dismissed.  The Texas Tort Claims Act governs when governmental units of the state, including cities, may be held liable to private litigants.  Texas Civ. Prac. & Rem. Code Ann. §§ 101.021, 101.055, 101.057; Campbell v. City of San Antonio, 43 F.3d 973, 977 n.7 (5th Cir. 1995).  Section 101.057(2) of the Act expressly proscribes municipal liability for claims arising out of "assault, battery, false imprisonment, or any other intentional

tort." <u>Campbell</u>, 43 F.3d at 977.

As for unintentional torts, the Court is not sure what "<u>prima facie</u> tort" is and apparently neither are Texas courts, which seem to be in agreement that Texas has not recognized such a tort. <u>RRR Farms, Ltd. v. American Horse Protection Ass'n, Inc.</u>, 957 S.W.2d 121, 125 n.2 (Tex. App.--Houston (14th Dist.) Nov. 6, 1997), review denied; <u>Tatum v. Nationsbank of Texas, N.A.</u>, 1995 WL 437413, *5-6 (Tex. App.--Dallas July 25, 1995)(a number of Texas courts have considered whether a <u>prima facie</u> tort cause of action should be adopted in Texas and have universally concluded that if it is to be adopted, it is a matter for the legislature), writ denied[17]; <u>Greater Southwest Office Park, Ltd. v. Texas Commerce Bank National Assoc.</u>, 786 S.W.2d 386 390 (Tex. App.--Houston (1st Dist.) Jan 18, 1990), writ denied ("we have found not Texas cases recognizing a 'prima facie tort,' nor have we been cited to any"). Thus the Court dismisses this claim as a matter of law.

Neither side has addressed the state law claims for negligent hiring and retention of employees, negligence, and gross negligence. Thus the Court presumes they are not covered by the motion for summary judgment and are still pending. Nevertheless, it is not clear from Plaintiff's amended complaint specifically which act(s) constitute(s) the generally alleged negligence or

---

[17] The Dallas court defined a "<u>prima facie</u> tort" as "the infliction of intentional harm without excuse or justification by an act or series of acts which otherwise would be lawful and which results in special damage." <u>Id.</u> at *5, <u>citing</u> <u>Martin v. Trevino</u>, 578 S.W.763, 772 (Tex. Civ. App.--Corpus Christi 1978, writ ref'd n.r.e.).

gross negligence.

Accordingly, for the reasons explained above, the Court

ORDERS that Defendants' motion for summary judgment against individual Defendants in their individual capacities is GRANTED as to Defendant Bradford and DENIED as to the others. Moreover the motion is GRANTED as to intentional tort claims and <u>prima facie</u> tort against the City of Houston. The motions is DENIED as to all other claims against the City of Houston. Finally, all eighth amendment claims are DISMISSED.

**SIGNED** at Houston, Texas, this *10th* day of January, 2000.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE